Requestor: Hon. Thomas A. Coughlin, III Commissioner Department of Correctional Services State Office Building Campus Albany, N.Y. 12226
Written by: Robert Abrams, Attorney General
Your counsel has asked whether health care staff in a correctional facility or at Walsh Medical Center, which is operated by the Department, may honor non-hospital do-not-resuscitate (hereafter "DNR") orders made pursuant to Article 29-B, section 2977 of the Public Health Law. Neither Walsh Medical Center nor facility infirmaries are licensed hospitals.
Article 29-B of the Public Health Law was enacted to improve procedures for the issuance of DNR orders. Chapter 370 of the Laws of 1991 (now § 2977) was added to include non-hospital orders not to resuscitate. A non-hospital order not to resuscitate is defined in Public Health Law § 2961(16) as
 "an order issued in accordance with section twenty-nine hundred seventy-seven of this Article that directs emergency medical service personnel and hospital emergency medical service personnel not to attempt cardiopulmonary resuscitation in the event the patient suffers cardiac or respiratory arrest."
Thus, the statute expressly limits the application of non-hospital DNR orders to emergency medical service personnel and hospital emergency medical service personnel.
Public Health Law § 2961(7) defines emergency medical service personnel as
 "the personnel of a service engaged in providing initial emergency medical assistance, including but not limited to first responders, emergency medical technicians, and advanced emergency medical technicians."
Staff providing health care service at a correctional facility do not fall within the definition of emergency medical service personnel pursuant to section 2961(7).
Public Health Law § 2961(10) defines hospital emergency medical service personnel as certain personnel of a licensed general hospital, which is defined in section 2801(10). As the medical facilities at correctional institutions are not licensed hospitals, health care staff at a correctional facility do not fall within the definition of hospital emergency service personnel as defined in Public Health Law § 2961(10).
Because the statute expressly states that non-hospital DNR orders may be directed to emergency medical service personnel and hospital emergency medical service personnel, it is our opinion that the Legislature did not intend that non-hospital DNR orders be acted upon by individuals who do not fall within either definition. Accordingly, the provisions of Article 29-B relating to non-hospital DNR orders do not apply to health care staff of a correctional facility or Walsh Medical Center.
This does not mean, however, that the Department's medical staff cannot honor the wishes of an inmate who has expressed a desire not to be resuscitated.
 "It has long been the common-law rule in this State that a person has the right to decline medical treatment, even life-saving treatment, absent an overriding State interest."
Matter of O'Connor, 72 N.Y.2d 517, 528 (1988); see also, Matter ofStorar, 52 N.Y.2d 363 (1981).
Article 29-B is not the exclusive procedure through which a patient may exercise that common-law right. In O'Connor and Storar, the Court of Appeals assessed whether life-sustaining treatment may be withheld in cases where the patient is incompetent. In both cases the parties sought advance court approval for withholding treatment. The Court held that, if there is clear and convincing proof that a patient made a firm commitment, while competent, to decline certain medical treatment under particular circumstances, then that wish should be honored even when the patient currently is unable to express her view. 72 N.Y.2d at 530-31;52 N.Y.2d at 376, 378-79.
In Matter of O'Connor, 72 N.Y.2d 517 (1988), the Court stated
 "the `clear and convincing' evidence standard requires proof sufficient to persuade the trier of fact that the patient held a firm and settled commitment to the termination of life supports under the circumstances like those presented. As a threshold matter, the trier of fact must be convinced, as far as is humanly possible, that the strength of the individual's beliefs and the durability of the individual's commitment to those beliefs . . . makes a recent change of heart unlikely. The persistence of the individual's statements, the seriousness with which those statements were made and the inferences, if any, that may be drawn from the surrounding circumstances are among the factors which should be considered.
 "The ideal situation is one in which the patient's wishes were expressed in some form of a writing, perhaps a `living will,' while he or she was still competent. The existence of a writing suggests the author's seriousness of purpose and ensures that the court is not being asked to make a life-or-death decision based upon casual remarks. Further, a person who has troubled to set forth his or her wishes in a writing is more likely than one who has not to make sure that any subsequent changes of heart are adequately expressed, either in a new writing or through clear statements to relatives and friends."
72 N.Y.2d at 531. (Citations omitted.)
One way to ensure that a patient's desire to decline medical treatment is honored is the drafting of a Health Care Proxy pursuant to Public Health Law Article 29-C. Like Article 29-B, Article 29-C provides procedural safeguards to ensure that a patient's wishes are honored. Through the drafting of a Health Care Proxy, the patient designates a third party to make any health care decisions should the patient become incompetent. The proxy also may be used to instruct the decision-maker as to the patient's wishes with regard to particular forms of treatment. Public Health Law § 2981(5).
We conclude that non-hospital do-not-resuscitate orders made pursuant to Public Health Law Article 29-B do not apply to health care staff at correctional facilities or at Walsh Medical Center. Department health care staff may, however, honor the wishes of patients expressed in accordance with standards established by the Court of Appeals. Patients may also employ health care proxies to convey their wishes as to medical treatment or to designate third parties to make health care decisions.